UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

KENNETH J. WILLIAMS,

                              Plaintiff,                 **DECISION AND ORDER**

              -against-                               16 Civ. 2188 (AEK)

COLLINS NOEL, MICHELE WICKHAM,
RAYMOND HERNANDEZ, and
SHANE LAFORGE,

                              Defendants.
------------------------------------------------------------X

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**

      Plaintiff Kenneth J. Williams brings this action against Defendants Collins Noel, Michele Wickham, Raymond Hernandez, and Shane LaForge (collectively, "Defendants")[1] pursuant to 42 U.S.C. § 1983 ("Section 1983") based on allegations that Defendants violated his rights under the Eighth Amendment to the U.S. Constitution. ECF No. 2 ("Compl."). Currently before the Court is Defendants' motion for summary judgment. ECF Nos. 129-30, 132-38. For the reasons that follow, Defendants' motion is GRANTED IN PART and DENIED IN PART.

**I.    BACKGROUND**

    **A.  Facts**

The following facts are undisputed unless otherwise noted.[2]

---

[1] Certain Defendants' names are misspelled in the Complaint and other case documents. *See* ECF No. 130 ("Defs.' Mem.") at 1 n.1; ECF No. 138 ("Noel Decl."); ECF No. 134 ("Wickham Decl."); ECF No. 137 ("Hernandez Decl."); ECF No. 136 ("LaForge Decl."). The spelling errors have not created any ambiguities, and the Court has used the correct spellings of all names in this Decision and Order.

[2] Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Civ. R. 56.1(a). In response, the party opposing

Between August 26, 2014 and March 11, 2015, Plaintiff was a patient at Mid-Hudson Psychiatric Center ("Mid-Hudson"), located in New Hampton, New York. ECF No. 132 ("Defs.' 56.1 Statement") ¶¶ 6-8, 18. Mid-Hudson is an accredited adult psychiatric hospital that provides comprehensive inpatient mental health services and ambulatory care to seriously and persistently mentally ill patients. *Id.* ¶ 18; ECF No. 135 ("Shivashankar Decl.") ¶ 3. Mid-Hudson does not admit patients directly from the community, but rather receives them pursuant to various provisions of the New York State Criminal Procedure Law ("CPL"). Defs.' 56.1 Statement ¶ 19. Plaintiff entered Mid-Hudson on August 26, 2014 pursuant to CPL § 730.40 for restoration to fitness to proceed to trial. *Id.* ¶ 21; Shivashankar Decl. ¶ 7. At Mid-Hudson, Plaintiff was assigned to Ward 32, which is situated in Building 3. *See* Defs.' 56.1 Statement ¶¶ 23-24; Shivashankar Decl. ¶ 9; Hernandez Decl. ¶¶ 6-7; LaForge Decl. ¶¶ 8-9.

---

summary judgment must include with their submission a document responding to each numbered paragraph in the movant's Rule 56.1 statement, and "if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." *Id.* at 56.1(b). Unless "specifically controverted by a correspondingly numbered paragraph" in the responsive submission of the opposing party, each numbered paragraph will be deemed admitted for purposes of the motion. *Id.* at 56.1(c). Plaintiff's "Counter-Statement of Material Facts," ECF No. 144 ("Pl.'s 56.1 Counter-Statement"), does not comply with Local Civil Rule 56.1. Specifically, Plaintiff does not "respond[ ] to each numbered paragraph" in Defendants' statement, and instead includes 38 paragraphs identifying purported inconsistencies in Defendants' testimony and moving papers. *See id.* Also in violation of Local Civil Rule 56.1, many of Plaintiff's paragraphs lack any citation. *See* Local Civ. R. 56.1(d).

Because Plaintiff has failed to submit a proper response, the Court may conclude that the facts in Defendants' Local Civil Rule 56.1 Statement are "uncontested and admissible." *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009). Nevertheless, despite the egregious deficiencies in Plaintiff's filings, the Court has, in its discretion, conducted a thorough review of the entire record for purposes of deciding this motion. *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (holding that "while a court is not required to consider what the parties fail to point out in their Local Rule 56.1 statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement" (quotation marks omitted)).

All four Defendants are current employees of Mid-Hudson. At the time of the events that are subject of this lawsuit, Defendants Noel, LaForge, and Hernandez were Secure Hospital Treatment Assistants ("SHTAs"), and Defendant Wickham was a Senior SHTA. Noel Decl. ¶ 3; LaForge Decl. ¶ 3; Hernandez Decl. ¶ 2; Wickham Decl. ¶ 2. SHTAs are responsible for the safety and security of patients at Mid-Hudson, and are tasked with de-escalating situations with patients using verbal and physical techniques to ensure the safety of patients and others. Noel Decl. ¶ 3; LaForge Decl. ¶ 4; Hernandez Decl. ¶ 3. Senior SHTAs are responsible for supervising SHTAs and ensuring the safety and security of the SHTA staff and patients. Wickham Decl. ¶ 3. Plaintiff alleges that while a patient at Mid-Hudson, he was assaulted by Defendants on two separate occasions.

### 1. The October 12, 2014 Incident

On October 12, 2014, Plaintiff was on "close observation" following an incident in which he chased another patient down a hallway and punched that patient in the head. Defs.' 56.1 Statement ¶ 28. A patient on close observation is closely monitored by Mid-Hudson staff until it is determined the patient is no longer a threat to himself or others. *Id.* ¶ 29; Hernandez Decl. ¶ 10. While on close observation, Plaintiff was required to be "in designated areas of a room or line at all times so staff [could] easily monitor [him]." Defs.' 56.1 Statement ¶ 30. When a patient is on close observation, all staff assigned to the patient's ward must document their observations of the patient in the patient's medical chart at the end of an eight-hour shift. *Id.* ¶ 31. At 12:25 p.m., Defendant Hernandez noted that Plaintiff had accused staff of tampering with his mail, and that he made threatening exclamations toward staff. *Id.* ¶¶ 36-37. Plaintiff was redirected by staff and told to line up for the dining hall; he continued to talk under his breath and to talk to his fellow patients as he did so. *Id.* ¶¶ 38-39. In the dining hall, Plaintiff "was

attempting to agitate other patients," *id*. ¶ 40; he was talking very loudly, and claiming he was going to stab the staff and kill the staff when he got back out on the street, *id*. ¶ 41. Mid-Hudson staff attempted to get Plaintiff to stop this behavior, but he did not. *See id*. ¶ 42. Plaintiff refused to sit down, and attempted to incite other patients to fight the Mid-Hudson staff. *Id*. ¶ 43. Defendant Wickham told Plaintiff that if he did not calm down, he would have to leave the dining room. *See id*. ¶ 44. Plaintiff instead suddenly punched Defendant LaForge in the jaw. *Id*. In response, Defendants LaForge and Hernandez performed a "two-man takedown" of Plaintiff, which involved "position[ing] themselves hip to hip with the patient, supporting the patient's shoulder with the patient's arm out across the SHTA and step[ing] in unison with [the patient] to get the patient down to the floor." *Id*. ¶¶ 45-46. Defendant Wickham then ordered that Plaintiff be removed from the dining hall. *Id*. ¶ 47.

Defendants LaForge and Hernandez walked Plaintiff out of the dining hall in a "two-person escort," assisted by Defendants Noel and Wickham. *Id*. ¶ 48; Wickham Decl. ¶ 16; Noel Decl. ¶ 9. As he was being escorted out of the dining hall, Plaintiff said, "I'll get a lawsuit, I got something for you." Defs.' 56.1 Statement ¶ 49. Once Plaintiff had been taken to the staircase behind the dining hall, Plaintiff began banging his head against the wall and the railing. *Id*. ¶ 50. He also bit his lip until it was bloody, and then proceeded to spit blood at Defendants. *Id*. ¶ 51. At this point, Defendant Wickham momentarily left the stairwell area, returning shortly thereafter with Nurse Ellen Huebner and with spit shields for the other Defendants. *Id*. ¶¶ 52-53. Nurse Huebner ordered that Plaintiff be placed in a wrist-to-belt velcro restraint. *Id*. ¶ 54. Once the restraint was in place, Defendants placed Plaintiff in a wheelchair to transport him back to Ward 32. *Id*. ¶ 58; Shivashankar Decl. ¶ 12. While being transported, Plaintiff said that Defendants LaForge and Hernandez had assaulted him—he asserted that they punched him in his

face, and that both of his arms were broken because "one grabbed one arm and the other grabbed his other and they kept pulling until the[y] broke." Wickham Decl. Ex. B at 2; Defs.' 56.1 Statement ¶ 59.

Back in Ward 32, Plaintiff refused to be evaluated by Mid-Hudson medical staff. *Id.* ¶¶ 65, 73, 76, 79, 82, 83. Dr. Gowaramma Shivashankar, a psychiatrist and, at the time, the Director of Clinical Services at Mid-Hudson, was the on-call attending physician on October 12, 2014. Shivashankar Decl. ¶¶ 2, 10. On three separate occasions between 1:30 p.m. and 3:15 p.m., Plaintiff made various complaints to Dr. Shivashankar; he said that he wanted an x-ray and a medical exam, but he refused to be examined, and stated that he wanted "to stay this way until the Justice Center comes and sees me." Defs.' 56.1 Statement ¶¶ 64-75; Shivashankar Decl. ¶¶ 13, 15, 16. Although Plaintiff refused to be examined, Dr. Shivashankar observed blood on Plaintiff's lips and scratches on his face. Defs.' 56.1 Statement ¶ 67; Shivashankar Decl. ¶ 14. At different times on October 12 and 13, 2014, Plaintiff expressed to Dr. Shivashankar that he believed his shoulder was broken, that he was experiencing pain in his head and back, and that he was having difficulty moving. Defs.' 56.1 Statement ¶¶ 74, 78, 82; Shivashankar Decl. ¶¶ 13, 16-18. Dr. Shivashankar, however, observed on those dates that Plaintiff was able to move his neck, hand, and shoulder without any visible pain. Defs.' 56.1 Statement ¶ 84; Shivashankar Decl. ¶¶ 15, 20. Since 2014, Plaintiff has never been diagnosed with torn ligaments in his shoulder and has never been treated for injuries to his right shoulder. Defs.' 56.1 Statement ¶ 111.

Plaintiff's account of what happened in the stairwell and Ward 32 differs. Plaintiff testified at his deposition that Defendants "started messing with [him]" in the cafeteria, before

pulling him into an adjacent stairwell. ECF No. 143-1 ("Williams Dep. Tr.") at 300.[3] According to Plaintiff, while in the stairwell, Defendants slammed his head into the wall and punched him, and Defendant Noel—who Plaintiff described as "the big Jamaican dude"—"tore [his] whole shoulder" and tried to break his arm. *Id.* at 266, 300; *see also* Rosales Decl. Ex. D at 3; Compl. at 3.[4, 5] Plaintiff testified that following the incident he was brought to see Dr. Shivashankar, who "blocked the medical" and prevented him from being transferred to a hospital to receive further medical treatment. Williams Dep. Tr. at 360; Compl. at 3. Plaintiff testified he still feels pain "inside of [his] shoulder" "like electricity." Williams Dep. Tr. at 268.

Following the alleged assault, Plaintiff filed a complaint with the New York State Justice Center for the Protection of People with Special Needs (the "Justice Center"), asserting that he

---

[3] Plaintiff's counsel attached Plaintiff's entire deposition transcript, along with the deposition transcripts of the four Defendants, as a single exhibit to Plaintiff's Affirmation in Opposition. *See* ECF No. 143-1. Plaintiff's deposition transcript is located at pages 250-513 of this exhibit. Accordingly, this Decision and Order cites the page numbers generated by the Court's electronic case filing ("ECF") system when referring to Plaintiff's deposition transcript.

[4] The Complaint—submitted by Plaintiff when he was still proceeding *pro se*—was prepared using a standard S.D.N.Y. fillable Section 1983 complaint form, which does not have numbered paragraphs. Accordingly, all citations to the Complaint in this Decision and Order are to page numbers, not paragraph numbers.

[5] Normally, allegations in a pleading are not considered affirmative evidence with respect to a motion for summary judgment. But because the *pro se* Complaint was drafted by Plaintiff himself, and because Plaintiff swore that the contents of the pleading were true under penalty of perjury, *see* Compl. at 7, the Complaint functions here as a form of affidavit for summary judgment purposes. *See, e.g., Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (where plaintiff "verifie[s] his complaint by attesting under penalty of perjury that the statements in the complaint [are] true to the best of his knowledge," the "verified complaint is to be treated as an affidavit for summary judgment purposes"), *abrogated on other grounds by Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020); *Rickett v. Orsino*, No. 10-cv-5152 (CS) (PED), 2013 WL 1176059, at *2 n.5 (S.D.N.Y. Feb. 20, 2013), *adopted by* 2013 WL 1155354 (S.D.N.Y. Mar. 21, 2013).

had been physically abused by Defendants Noel,[6] Hernandez, LaForge, and Wickham. Defs.' 56.1 Statement ¶ 89; Rosales Decl. Ex. D.[7] The Justice Center conducted an investigation of the October 12, 2014 incident; nine individuals were interviewed, including Plaintiff and all Defendants except Defendant LaForge, who was on medical leave at the time of the investigation. Defs.' 56.1 Statement ¶¶ 89-92; Rosales Decl. Ex. D. Following the investigation, the Justice Center issued a "Report of Unsubstantiated Finding," concluding that Plaintiff's allegations were unsubstantiated with respect to all four Defendants and recommending "that cameras be installed in the dining hall and in the stairwell outside the hall" "[d]ue to staff reporting that the dining hall is the most dangerous place on the campus." Defs.' 56.1 Statement ¶ 101; Rosales Decl. Ex. D at 5; Rosales Decl. Ex. E.

### 2.     The December 17, 2014 Incident

There are no details about a December 17, 2014 incident anywhere in the record. None of the four Defendants had any physical interaction with Plaintiff on December 17, 2014. Defs.' 56.1 Statement ¶ 124. Plaintiff testified at his deposition that he does not believe any of the Defendants were involved in an incident that took place on December 17, 2014. Williams Dep. Tr. at 362-63, 368-69. He further testified that he does not remember any details related to an incident that took place on this date, but recalls that he "contacted the hotline," "called the Justice Center," and that he "took pictures." *Id.* at 364-65. The parties did not submit any photos or any other records from a December 17, 2014 incident in connection with this motion.

---

[6] Though Plaintiff did not identify Defendant Noel by name to the Justice Center, he described one of the participants in the incident as "the bald headed Jamaican staff," who was later determined to be Noel. Rosales Decl. Ex. D at 3.

[7] Plaintiff reported the alleged assault to the Justice Center no later than October 15, 2014. *See* Rosales Decl. Ex. G.

## B. Procedural History

Plaintiff, proceeding *pro se*, initiated this action by filing a complaint that was docketed on March 22, 2016.  On March 27, 2018, the Honorable Nelson S. Román granted Defendants' motion to dismiss Mid-Hudson as a defendant on the ground of Eleventh Amendment immunity, but refused to dismiss the individual defendants based on insufficient service of process and instead allowed Plaintiff an extension of time to effect service properly.  ECF No. 54.  Defendants were all properly served on May 9, 2018, ECF Nos. 63-66, and filed their Answer to the Complaint on July 5, 2018, ECF No. 67.  Thereafter, Plaintiff retained counsel to represent him in this proceeding.  *See* ECF No. 84.[8]  The parties then commenced discovery, which concluded on June 30, 2021.  *See* ECF No. 124.

Defendants filed their motion for summary judgment, along with a Local Civil Rule 56.1 statement and multiple declarations, on September 13, 2021.  ECF Nos. 129-30, 132-38.  On November 22, 2021, Plaintiff submitted an affirmation in opposition to the motion, as well as his counter-statement of material facts.  ECF Nos. 143-44.  The motion was fully submitted on December 10, 2021 when Defendants submitted their reply brief and response to Plaintiff's Local Civil Rule 56.1 counter-statement.  ECF Nos. 145-46.

---

[8] The parties submitted a fully executed Form AO 85, "Notice, Consent, and Reference of A Civil Action to A Magistrate Judge," consenting to the reassignment of this matter to a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c).  Judge Román endorsed and docketed the form on March 31, 2020, ECF No. 106, and the matter was reassigned to the Honorable Lisa Margaret Smith.  The case was reassigned to the undersigned on October 15, 2020.

## II. DISCUSSION

### A. Standard for Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 320-23 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. "To defeat summary judgment, therefore, nonmoving parties 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and they 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted). In determining whether a genuine issue of material fact exists, a court should "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in its favor." *Mount Vernon Fire Ins. Co. v. Belize N.Y., Inc.*, 277 F.3d 232, 236 (2d Cir. 2002); *see also Anderson*, 477 U.S. at 261 n.2. At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156,

164 (2d Cir. 2011) (quotation marks omitted).  Thus, a court's goal should be "'to isolate and dispose of factually unsupported claims.'"  *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex Corp.*, 477 U.S. at 323-24).  "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted."  *Cruden v. Bank of N.Y.*, 957 F.2d 961, 975 (2d Cir. 1992) (quotation marks omitted).

### B. Analysis

#### 1. Applicable Law

Under Section 1983, "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."  42 U.S.C. § 1983.  "This language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere."  *Pedroza v. Panzarella*, No. 18-cv-3320 (PMH), 2021 WL 3621808, at *4 (S.D.N.Y. Aug. 16, 2021) (quotation marks and alterations omitted).

In the Complaint, Plaintiff asserts that Defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment.  Compl. at 3, 12.  Because he was a pretrial detainee at the time of the alleged assault, however, *see* Defs.' 56.1 Statement ¶ 21, Plaintiff's Section 1983 claims arise under the Fourteenth Amendment to the U.S. Constitution, rather than the Eighth Amendment, *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims are evaluated under the Due Process Clause because pretrial detainees have not been convicted of a crime and thus may not be punished in any manner – neither cruelly and unusually nor otherwise." (cleaned up)).  Even though Plaintiff invoked the Eighth Amendment in his *pro se* Complaint, the Court construes Plaintiff's claims as having been filed pursuant to

the Fourteenth Amendment, and addresses the merits of the claims through that lens. *See, e.g.*, *Febus v. Feldman*, No. 17-cv-3408 (VB), 2020 WL 4748322, at *4 n.6 (S.D.N.Y. Aug. 17, 2020); *Correa v. Lynch*, No. 20-cv-2875 (PMH), 2021 WL 2036697, at *5 (S.D.N.Y. May 20, 2021).

The Due Process Clause of the Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Gerard v. City of New York*, 843 F. App'x 380, 382 (2d Cir. 2021) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). To establish a Fourteenth Amendment violation, Plaintiff must "show only that the force purposely or knowingly used against him was objectively unreasonable." *Correa*, 2021 WL 2036697, at *7 (quoting *Kingsley*, 576 U.S. at 396-97). This objective standard requires Plaintiff to establish that "the force was 'not rationally related to a legitimate governmental objective or that it [was] excessive in relation to that purpose.'" *France v. Morton*, No. 12-cv-05576 (KMK), 2018 WL 1276860, at *9 (S.D.N.Y. Mar. 9, 2018) (quoting *Kingsley*, 576 U.S. at 398).

**2.   The October 12, 2014 Incident**

Without question, there are disputes of fact as to what transpired on October 12, 2014—as set forth above, the parties offer fundamentally different accounts of the events of that afternoon. Defendants maintain that they used only appropriate and necessary force against Plaintiff; they further assert that Plaintiff harmed himself by banging his head against a wall and a railing and biting his own lip. According to Defendants, any injuries Plaintiff sustained were self-inflicted. Plaintiff contends that he was violently attacked in a manner that resulted in long-lasting injuries.

Defendants insist that there is no *genuine* issue of material fact for trial here as to Plaintiff's claim of excessive force because Plaintiff's allegations are so inconsistent and

uncorroborated that no reasonable jury could believe Plaintiff's testimony, and that Plaintiff's claims are contradicted by other evidence in the record. Defs.' Mem. at 13-21. As explained in greater detail below, the Court disagrees.

### a. Plaintiff's Evidence Is Not Wholly Inconsistent Such That No Reasonable Jury Could Believe His Claims

At the summary judgment stage, a district court "should not weigh evidence or assess the credibility of witnesses." *Haves v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996). "Even when a plaintiff has relied exclusively on his own testimony, courts have denied summary judgment to defendants, as long as the plaintiff's 'testimony was not contradictory or rife with inconsistencies such that it was facially implausible.'" *Morehouse v. Vasquez*, No. 17-cv-4836 (KMK), 2020 WL 1049943, at *12 (S.D.N.Y. Mar. 4, 2020) (quoting *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010)) (collecting cases). "Indeed, courts have denied summary judgment to defendants even where a plaintiff's version of the events is contradicted by substantial evidence." *Id.* (collecting cases).

The Second Circuit has recognized, however, that,

> in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether the jury could reasonably find for the plaintiff, and thus whether there are any genuine issues of material fact, without making some assessment of the plaintiff's account.

*Jeffreys*, 426 F.3d at 554 (cleaned up). In *Jeffreys*, the Second Circuit affirmed the district court's grant of summary judgment in a Section 1983 action where the plaintiff claimed that New York City police officers assaulted him and threw him out of the third-story window of a school building during the course of placing him under arrest. 426 F.3d at 551-52. Jeffreys, who relied "almost exclusively on his own testimony" in opposing the defendants' motion for summary judgment, *id.* at 551, had given contradicting accounts of what had happened, and on

12

three separate occasions "confessed to having jumped out of the third-story window of the school building," *id.* at 552.  Further, he could not identify any of the individual officers who participated in the alleged attack, nor could he provide any description of how they appeared on the night in question; in fact, in an interview with police just two days after the incident, Jeffreys stated that "the first time he saw any police officers was when he was on the ground outside the school." *Id*.  The *Jeffreys* panel noted that while there were many material issues of fact disputed in the case, the district court did not err in granting summary judgment in favor of the defendants because no *genuine* issue of material fact excited because "no reasonable person could believe Jeffreys's testimony." *Id.* at 554-55.

Simply put, the record here does not present "the rare circumstance" where no reasonable factfinder could credit Plaintiff's version of events.  While certain details of Plaintiff's account of the October 12, 2014 incident have changed at different points in time, in stark contrast to *Jeffreys*, there is no evidence that Plaintiff has ever said that the alleged assault did not occur, or that anyone other than Mid-Hudson staff is responsible for his injuries.  Whereas the plaintiff in Jeffreys did not publicly state that he had been assaulted or thrown out of a window by officers until *nine months* after the assault allegedly occurred—despite numerous court appearances in the interim, 426 F.3d at 552—Plaintiff here immediately asserted that he had been assaulted by Defendants in the back stairwell of the dining hall.  Defendant Wickham completed an incident report on October 12, 2014, in which she recorded: "While en route from the dining hall back to building #3 Pt William was continually pointing to SHTA R. Hernandez and SHTA LaForge claiming that they beat him up."  Wickham Decl. Ex. B at 2.  As a result of this day-of allegation, Defendants LaForge and Hernandez were separated from Plaintiff's ward in accordance with Mid-Hudson policy of separating staff from patients when an allegation of

13

abuse has been made. Defs.' 56.1 Statement ¶ 61; Hernandez Decl. ¶ 28; LaForge Decl. ¶ 26; Wickham Decl. ¶¶ 25-28; Wickham Decl. Ex. B at 2. Plaintiff also promptly filed a complaint with the Justice Center, and later repeated in interviews with investigators that he was "gang assaulted" by four staff on October 12, 2014 in the stairwell outside the dining hall. Rosales Decl. Ex. D at 2-3.

Moreover, Plaintiff has been generally consistent in other important aspects of his narrative. For example, Plaintiff identified the four Defendants as the individuals responsible for the October 12, 2014 incident within a relatively short period of time after the incident occurred. Unlike the plaintiff in *Jeffreys*, who was unable to identify or even describe any of the officers involved, 426 F.3d at 552, Plaintiff named Defendants Hernandez and LaForge as participants in the assault on the day of the incident, and identified Defendants Wickham and Noel (by physical description) by no later than the date of his interview with the Justice Center during its investigation of the matter. Wickham Dec. Ex. A at 2; Rosales Decl. Ex. D at 3. There is no dispute that all four Defendants were involved in removing Plaintiff from the dining hall and were with him in the back stairwell, where Plaintiff alleges the assault occurred. *See* LaForge Decl. ¶ 16; Wickham Decl. ¶ 16; Hernandez Decl. ¶ 22; Noel Decl. ¶ 9. The record reflects that Plaintiff had prior interactions with Defendants Hernandez and LaForge in his housing unit, and a reasonable jury could conclude that the slight delay in identifying Defendants Wickham and Noel could be explained by his relative lack of familiarity with them. *See* LaForge Decl. ¶ 26 (noting that in response to Plaintiff's allegations, he "was removed from ward 31 and 32 pending investigation"); Hernandez Decl. ¶ 28 (same); *see also* Williams Dep. Tr. at 297 (Plaintiff testified at deposition he remembers Defendant Hernandez because "[h]e used to always taunt me"). Indeed, Plaintiff Noel explained that he "did not regularly work with Mr. Williams, but [ ]

14

was responding to his outburst in the dining hall" on October 12, 2014.  Noel Decl. ¶ 15.  And Defendant Wickham, as a Senior SHTA, had a supervisory role, *see* Wickham Decl. ¶ 3, and a reasonable jury could infer that this would have made individual patients less familiar with her than they were with the SHTAs.  As recognized by the panel in *Jeffreys*, "'[i]f there is a plausible explanation for discrepancies in a party's testimony, the court considering a summary judgment motion should not disregard the later testimony because of an earlier account that was *ambiguous, confusing, or simply incomplete.*'"  *Jeffreys*, 426 F.3d at 555 n.2 (quoting *Langman Fabrics v. Graff Californiawear, Inc.*, 160 F.3d 106, 112 (2d Cir. 1998)) (emphasis in *Jeffreys*); *see also Rickett*, 2013 WL 1176059, at *14.[9]

In addition, Plaintiff has consistently said that the assault resulted in injuries to his arm and shoulder area.  On October 12, 2014, Plaintiff stated that Defendants LaForge and Hernandez punched him in his face, and that both of his arms were broken because "one grabbed one arm and the other grabbed his other and they kept pulling until the[y] broke."  *See* Wickham Decl. Ex. B at 2.  In the Complaint, which functions as a form of affidavit here, *see supra* Section I.A.1 at n.5, Plaintiff alleges that Defendant Noel "tried to break [his] arm and tore ligaments from [his] chest and shoulder," Compl. at 3.  At his deposition, Plaintiff testified that

---

[9] Defendants also emphasize Plaintiff's deposition testimony that the alleged October 12, 2014 assault involved some 30 Mid-Hudson staff—none of whom he could identify other than Defendants—as a significant discrepancy in his account of the alleged assault.  *See* Defs.' Mem. 14-15, 17, 19; ECF No. 145 ("Defs.' Reply Mem.") at 4.  While this testimony appears to be a departure from Plaintiff's prior accounts, it is not wholly inconsistent with the allegation in the Complaint that there may have been others who assaulted Plaintiff on October 12, 2014, but that he could only identify the four Defendants.  *See* Compl. at 3 ("I don't know like if anyone else was involved.  Being the fact that I can only identify the four who was immediately assaulting me.").  The Court does not find this testimony so problematic as to invalidate Plaintiff's entire account of the October 12, 2014 incident; of course, "Defendants may find the inconsistency useful for impeachment purposes at trial."  *Butler v. Gonzalez*, No. 09-cv-1916 (PAC) (THK), 2010 WL 3398150, at *10 (S.D.N.Y. Aug. 26, 2010) (citing *Jeffreys*, 436 F.3d at 554)).

Defendants "tore [his] whole shoulder," Williams Dep. Tr. at 266, and that he still feels pain "inside of [his] shoulder" "like electricity" as a result of injuries he sustained, *id.* at 268; *see also id*. at 301, 417-18.  Thus, this is not a case where summary judgment is appropriate because "plaintiff has changed his allegations regarding his injuries a number of times during the course of this litigation." *See Shabazz v. Pico*, 994 F. Supp 460, 469 (S.D.N.Y. 1998) (Sotomayor, J.) (finding Plaintiff's allegations regarding his injuries incredible where he claimed to suffer "serious physical injury and protracted physical injury and pain" in his complaint, but at deposition testified to suffer only "emotional and psychological scars" and could not state in any detail where on his body he had sustained physical injuries).  To the contrary, the overarching allegation that Plaintiff suffered shoulder injuries due to the alleged assault has remained consistent.[10]

---

[10] In Plaintiff's Initial Disclosures, prepared by counsel and served on April 29, 2019, Plaintiff's computation of damages includes "approximately $5,000,000 . . . for pain and suffering of the loss of motion and permanent impairment of his dominant right hand." Rosales Decl. Ex. B at 8.  Defendants have identified another lawsuit initiated by Plaintiff—*Williams v. Suffolk County Correctional Facility*, No. 19-cv-3790 (E.D.N.Y.)—in which Plaintiff alleged that his hand was fractured and he suffered back contusions following an October 20, 2017 incident at the Suffolk County Correctional Facility.  Defs.' Mem. at 16.  The listing of hand-related damages in this case appears to have been an error by counsel, who had only recently been retained when the Initial Disclosures were prepared.  During his deposition, Plaintiff acknowledged that the injuries to his hand were the result of the alleged incident at the Suffolk County Correctional Facility, rather than the 2014 incident at Mid-Hudson.  *See* Williams Dep. Tr. at 258.

Plaintiff's counsel is reminded that pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, litigants have a continuing obligation to supplement or correct any disclosure made pursuant to Rule 26(a) if and when the party "learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A); *see also Alessi Equip., Inc. v. Am. Piledriving Equip., Inc.*, No. 18-cv-3976 (JCM), 2022 WL 1204562, at *1 (S.D.N.Y. Apr. 22, 2022) (the Federal Rules "'anticipate[ ] supplemental disclosures' regarding damages 'with ever-greater level of detail'" as discovery progresses and trial approaches (quoting *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006))).

16

Finally, the fact that there are no witnesses who can corroborate Plaintiff's allegations is not fatal to his claims at this stage. *See Morehouse*, 2020 WL 1049943, at *14. According to Plaintiff, he was assaulted in a back stairwell, out of sight of cameras, where the only witnesses to the alleged assault that Plaintiff can identify with certainty are Defendants. *See* Compl. at 3; Williams Dep. Tr. at 297-99, 389; ECF No. 146 ("Defs.' Resp. to Pl.'s 56.1 Counter-Statement") ¶ 17. It is frankly not surprising, given these circumstances, that Plaintiff has not come forward with additional witnesses.

### b. Lack of Corroboration by Medical Records Is Not Fatal to Plaintiff's Claims

The fact that Plaintiff's claims are not corroborated by medical records also is not sufficient to warrant summary judgment in favor of Defendants regarding the October 12, 2014 incident. "[C]ourts in this district have not required that injuries caused by the alleged excessive force be corroborated by medical records." *Rickett*, 2013 WL 1176059, at *15 (quotation marks omitted). Indeed, even "the absence of visible injuries does not mean [ ] that Plaintiff was not harmed"; nor does it mean that he suffered only *de minimis* injuries. *See Ninortey v. Shova*, No. 05-cv-542 (SHS), 2008 WL 4067107, at *12 (S.D.N.Y. Sept. 2, 2008). The medical records submitted in connection with this motion consist of hand-written notes made by Mid-Hudson staff, primarily containing observations of Plaintiff's demeanor. *See* Shivashankar Decl. Exs. A, B. It is well established that Plaintiff refused to be examined by Mid-Hudson medical staff following the incident, Defs.' 56.1 Statement ¶¶ 65, 68, 79, 82, and as a result there are no records documenting any injuries that Plaintiff may have sustained to his face or shoulder. There are no x-rays, MRIs, or other medical imaging in the record, and thus there is no objective evidence showing that Plaintiff's alleged injuries are fabricated. Further, Plaintiff stated

17

repeatedly to Dr. Shivashankar on October 12 and 13, 2014 that he was experiencing pain, in a manner consistent with having suffered injuries on October 12, 2014.

This is not a case where the medical records cast such doubt on Plaintiff's version of events as to render his account wholly implausible or unbelievable.

\* \* \* \* \* \* \*

In sum, "while Plaintiff's testimony is certainly inconsistent with other evidence and is subject to serious question, it is not so blatantly false that the Court may simply reject it as a matter of law." *Morehouse*, 2020 WL 1049943, at \*15 (quotation marks omitted). Nor is it so "contradictory or rife with inconsistencies such that it [is] facially implausible." *Fincher*, 604 F.3d at 726. For the Court to find for Defendants at this point would require it to "make an impermissible credibility determination and weigh contradicting proof." *Morehouse*, 2020 WL 1049943, at \*15 (cleaned up). "While a jury may not believe Plaintiff's statements as to the extent of the force used by [Defendants], or the full extent of the harm Plaintiff claims he suffered, these issues cannot be resolved by the Court as a matter of law." *Ninortey*, 2008 WL 4067107, at \*12. Accordingly, Defendants' motion for summary judgment with respect to his claim of excessive use of force during the October 12, 2014 incident is DENIED.

### 3. The December 17, 2014 Incident

The complete absence of any evidence to substantiate Plaintiff's allegations regarding a December 17, 2014 incident at Mid-Hudson requires that summary judgment be granted in favor of Defendants as to this claim. All four Defendants have attested that they did not have any physical altercation with Plaintiff on this date. Hernandez Decl. ¶ 30; LaForge Decl. ¶ 28; Wickham Decl. ¶ 30; Noel Decl. ¶ 17; *see* Defs.' 56.1 Statement ¶ 124. In Plaintiff's opposition, he does not respond to Defendants' arguments regarding the December 17, 2014 incident, nor

does he make any other reference to a December 2014 assault. The failure to respond to this portion of Defendants' motion is sufficient to conclude that the claim regarding the December 17, 2014 incident has been abandoned. *See Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014) ("in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned").

Even if the claim had not been abandoned, there is no evidence in the record to raise a genuine issue of material fact with respect to the December 17, 2014 incident. In contrast to his deposition testimony regarding the October 12, 2014 incident, Plaintiff's testimony regarding the December 17, 2014 incident is vague, and he repeatedly testified that he was not able to recall the details of the incident. *See* Williams Dep. Tr. at 362-69, 396-97. While one report was referenced in the deposition, no documents regarding the December 17, 2014 incident have been presented to the Court for consideration as part of this motion, and though Plaintiff alleged in the Complaint that photographs were taken "after both incidents," Compl. at 4, no such photographs have been offered to support this claim, *see id.* at 14 (letter noting that "[t]here are no photos on file [at Mid Hudson] for . . . December 17, 2014"). With respect to the involvement of the named Defendants, Plaintiff testified he could not recall who was involved in the December 17, 2014 incident, and when asked specifically whether the Defendants here participated in the alleged assault, he responded, "I don't think so." Williams Dep. Tr. at 362-63. In sum, Plaintiff has offered no evidence from which a reasonable jury could conclude that Defendants used excessive force against Plaintiff on December 17, 2014 in violation of his rights under the Fourteenth Amendment. For all of these reasons, Defendants' motion for summary judgment as to the alleged December 17, 2014 incident is GRANTED.

### III.     CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (ECF No. 129) is GRANTED IN PART and DENIED IN PART.

An in-person status conference is hereby scheduled for October 19, 2022 at 11:00 a.m. in Courtroom 250 in the White Plains federal courthouse.  In advance of the conference, counsel must meet and confer to discuss potential trial dates between February and May 2023.

Dated:  September 16, 2022
        White Plains, New York

**SO ORDERED.**

_____
ANDREW E. KRAUSE
United States Magistrate Judge